# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TIANA SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STICKER MULE, LLC,<br><br>Defendant. | Case No. 22-cv-_____ |

## NOTICE OF REMOVAL

Defendant Sticker Mule, LLC ("Defendant"), by and through its counsel of record, hereby gives notice of removal of this action from the Fifth Judicial Circuit Court in and for Marion County, Florida to the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. In support, Defendant respectfully states as follows:

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1. On January 4, 2022, Plaintiff Tiana Smith ("Plaintiff") commenced this putative class action, captioned as *Tiana Smith v. Sticker Mule, LLC*, Case Number 22-CA-01, against Defendant in the Fifth Judicial Circuit Court in and for Marion County, Florida ("State Court Action").

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the operative

complaint against Defendant ("Complaint" or "Compl.") in the State Court Action is attached to this Notice as **Exhibit ("Ex.") A**, and true and correct copies of all other process, pleadings, and orders purportedly served upon Defendant in the State Court Action are attached to this Notice as **Ex. B**.[1]

3. A true and correct copy of the Register of Actions from the State Court Action is attached to this Notice as **Ex. C**.

4. Plaintiff purportedly served Defendant with a summons and the Complaint in the State Court Action on January 14, 2022. *See* Return of Service filed in the State Court Action, attached hereto as **Ex. D**. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

## JOINDER

5. No other defendants have been named in this action, and therefore, no joinder of additional defendants to this removal is necessary.

## RELEVANT ALLEGATIONS

6. Plaintiff's single-count Complaint seeks relief from Defendant, on behalf of herself and a putative class of similarly-situated persons, for allegedly making or causing to be made unlawful "telephonic sales calls" (specifically, text

---

[1] Plaintiff served discovery requests on Defendant prior to removal. However, the "majority view in the federal courts [is that] discovery requests served in state court prior to removal become 'null and void' on removal." *Needler v. Coca-Cola Refreshments USA, Inc.*, 2014 WL 8275991, at *4 (W.D. Ky. Nov. 19, 2014) (citations omitted).

messages) without the "prior express written consent" of the recipients thereof, in violation of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(8)(a). *See* Compl. ¶¶ 1, 2, 9, 38-44.

7. More specifically, Plaintiff's Complaint alleges, *inter alia*, that (i) "Defendant used a messaging platform … which permitted Defendant to transmit thousands of text messages automatically" to her and the putative class members in violation of the FTSA; (ii) "Defendant has [allegedly] placed telephonic sales calls [*i.e.*, text messages] to telephone numbers belonging to thousands of consumers listed throughout Florida without their prior express written consent"; (iii) she "believes the [putative] Class members number in the several thousands, if not more"; (iv) "the aggregate damages sustained by the [putative] Class are in the millions of dollars"; (v) "Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members" in this case; and (vi) "Plaintiffs claims are typical of the claims of the [putative] Class members, as they are all based on the same factual and legal theories." Compl. ¶¶ 20, 28, 29, 33, 35, 43. Plaintiff further alleges she received at least eight texts sent by or on behalf of Defendant. *Id*. ¶ 11.

8. The Complaint seeks statutory damages in the amount of at least $500.00 per violation (*i.e.,* "a minimum of $500.00 in damages" for each alleged violative text message sent to Plaintiff and the putative class members), injunctive and declaratory relief, and "any other available legal or equitable remedies." *Id*. ¶¶

4, 8, 44, Prayer. Furthermore, statutory damages can be trebled under the FTSA for willful or knowing violations, up to $1,500 per violation. Fla. Stat. § 501.059(10)(b).

9. Defendant disputes Plaintiff's allegations, believes the Complaint lacks any merit, and denies that Plaintiff or the putative class has/have been harmed in any way or that this case is capable of or appropriate for class treatment. By seeking removal, Defendant does not waive any arguments with respect to the Complaint.

## CAFA JURISDICTION

10. This Court has jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d)(2) & (5), which together provide, *inter alia*, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant…" and require that the proposed class must contain at least 100 persons. *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (summarizing CAFA removal requirements); *Miedema v. Maytag Corp.,* 450 F.3d 1322, 1327 (11th Cir. 2006) (same). As shown below, this case readily meets all of these requirements.

11. First, the State Court Action is a "class action" under 28 U.S.C. § 1332(d)(2), because Plaintiff seeks to represent a class of similarly situated individuals pursuant to Florida Rules of Civil Procedure 1.220(b)(2) and (b)(3).

Compl. ¶¶ 4, 27-36; *see also Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.,* 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23.").

12. Second, there is minimal diversity between Plaintiff and members of the putative class on the one hand and Defendant on the other. *See, e.g., McDaniel v. Fifth Third Bank*, 568 F.App'x. 729, 731 (11th Cir. 2014) (accepting Plaintiff's allegations as true for purposes of the court's jurisdictional analysis); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911-12 (11th Cir. 2014) (minimal diversity met for CAFA where "any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant"). In this regard, Plaintiff alleges that she is a "citizen and resident of Marion County, Florida" (Compl. ¶ 5), seeks to certify a Florida-specific class (*id*. ¶ 27), and alleges that Defendant is a "foreign corporation" that "maintains its primary place of business and headquarters in Amsterdam, New York" (*id*. ¶ 7). *See also* **Ex. E** attached hereto (Nevada Secretary of State's website, showing that Defendant is a Nevada limited liability corporation); Declaration of Garrett Smith, attached hereto as **Ex. F**, at ¶ 3 (confirming same).

13. Third, the possible class number and amount in controversy well exceed the requisite minimums under CAFA based on the face of Plaintiff's Complaint alone. *See, e.g., Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061-1062 (11th Cir. 2010) ("[C]ourts may use their judicial experience and common sense in

determining whether the case stated in a complaint meets federal jurisdictional requirements" and may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable."); *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met); *Fox v. Ritz-Carlton Hotel Co., L.L.C.,* 977 F.3d 1039, 1045 (11th Cir. 2020) ("'If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.'") (quoting *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.8 (11th Cir. 2010)).[2]

14. In particular, and as noted above, Plaintiff seeks a minimum of $500.00 for each violation, and alleges in her Complaint that: (a) Defendant sent "thousands" of text messages to her and "to telephone numbers belonging to thousands of consumers listed throughout Florida" in purported violation of the FTSA; (b) the potential class members number in "the several thousands, if not more"; (c) "the

---

[2] Defendant does not concede (and indeed disputes) that Plaintiff is entitled to recover any damages, nor is it required to do so for present purposes. *See, e.g., Anderson v. Witco Life Ins. Co.,* 943 F.3d 917, 924 (11th Cir. 2019) ("A defendant seeking to remove a case to federal court must file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"); *Mangano v. Garden Fresh Rest. Corp.*, 2015 WL 5953346, at *1 (M.D. Fla. Oct. 13, 2015) ("A Notice of Removal must plausibly allege the jurisdictional amount, not prove the amount."); *Dudley v. Eli Lilly & Co.,* 778 F.3d 909, 913 (11th Cir. 2014) ("'[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.' [] Moreover, at the jurisdictional stage, 'the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'") (quoting *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 751, 754 (11th Cir. 2010)).

aggregate damages sustained by the [putative] Class are in the millions of dollars"; (d) Defendant "knowingly" violated the FTSA for treble statutory damages purposes; and (e) her pleaded claim (*i.e.,* that she allegedly received at least eight violative text messages that were "knowingly" made by or behalf of Defendant) is "typical" of the putative class members' claims. Compl. ¶¶ 11, 20, 28, 29, 33, 35, 43. Conservatively assuming that "several thousands" of class members, as alleged, means there are at least 3,000 class members, the potential number of class members exceeds the CAFA threshold of 100. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "several" as meaning "more than one or two but not a lot"); *Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.,* 528 F. Supp. 2d 362, 390 (S.D.N.Y. 2007) (explaining that "several" means "more than two"); *Barrett v. C.O. Matters,* 2015 WL 5881602, at *9, n.9 (M.D. Pa. Sept. 30, 2015) ("Although the word 'several' may sometimes be used to mean 'more than one,' it is typically defined as 'more than two.'") (citing, *inter alia*, *Laboratoires Perouse* and BLACK'S).

15. Further, based on the allegations in the Complaint and reasonable deductions and inferences to be drawn thereon, the alleged amount in controversy in this case easily exceeds $5,000,000. *See Roe,* 613 F.3d at 1061-1062; *Williams,* 269 F.3d at 1319; *Fox,* 977 F.3d at 1045. For example, conservatively estimating that the putative class members received more than one violative text message like Plaintiff allegedly did (*i.e.,* that Plaintiff's claims are truly "typical" of the putative class, as

she proffers), and that each putative class member would be entitled to up to $1,500 in trebled statutory damages under the FTSA for a proven "knowing" violation, it is plausible that the amount in controversy alleged in this Complaint exceeds the CAFA minimum threshold (*i.e.*, 3,000 putative class members, multiplied by 2 texts each, multiplied by $1,500 per text in trebled damages equals $9 million). If each class member "typically" received the same number of text messages as Plaintiff allegedly did, the alleged amount in controversy increases substantially (*i.e.*, 3,000 putative class members, multiplied by 8 texts each, multiplied by $1,500 per text in trebled damages equals $36 million).[3] Courts in the Eleventh Circuit and elsewhere routinely calculate the amount in controversy for removal purposes in this fashion.[4] *See, e.g., Doss v. Am. Fam. Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy" under CAFA); *Torres v. Countrywide*

---

[3] Even if "several thousands" means only two thousand class members (though again the common legal definition is that "several" means *more* than two), the alleged amount in controversy in this case is easily met (*i.e.*, 2,000 class members X at least two texts X $1,500 in damages = $6 million). *See also Roe,* 613 F.3d at 1064 ("[W]hen a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirement, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate.").

[4] Defendant acknowledges that, in *Pretka*, the Eleventh Circuit held that "[t]he typicality element of a class action, by itself, does not allow us to infer that the *amounts* of the named plaintiffs' claims are similar to those of other class members." 608 F.3d at 769 (emphasis in original). Here, the Court need not infer any amounts and need only look to the Complaint. Indeed, according to the Complaint, each putative class member would be entitled to $500 or $1,500 per unlawful text, would had to have received at least one such text be in the class, likely received more than one text, and may have received as many as eight texts (assuming Plaintiff's claim is truly "typical" as alleged).

*Home Loans, Inc.*, 2014 WL 3742141, at *2 (S.D. Fla. July 29, 2014) (calculating amount in controversy under CAFA in this manner, holding that "if every member of the proposed class has a claim worth the same amount as Plaintiff's, the amount in controversy is easily satisfied"); *Bayberry Lakes Homeowners Ass'n, Inc. v. Boeneman*, 2018 WL 6680993, at *1–2 (M.D. Fla. Sept. 28, 2018) (concluding multiplying the amount of damages of one plaintiff across the putative class clearly shows the damages meet the CAFA jurisdictional threshold) (citing *Pretka,* 608 F.3d at 769); *Bankhead v. Castle Parking Sols., LLC*, 2017 WL 10562976, at *3 (N.D. Ga. Dec. 1, 2017) (determining amount in controversy based on allegations in the complaint alone, using plaintiff's estimates regarding damages and potential class size as a "base amount"); *Scott v. Ing Clarion Partners, LLC,* 2006 WL 3191184, at *4 (N.D. Ga. Oct. 31, 2006), *aff'd*, 262 F. App'x 983 (11th Cir. 2008) (calculating the amount in controversy for the class by multiplying amount of plaintiff's alleged damages by size of class).[5] And all this is before attorneys' fees (which are available under the FTSA) are taken into account, which may also be considered in determining the amount in controversy. *See, e.g., Federated Mut. Ins. Co. v.*

---

[5] *See also Napoli v. HSBC Mortg. Servs. Inc.,* 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) ("Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint.") (collecting cases); *Alper v. Select Portfolio Servicing, Inc*., 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) ("Because named plaintiffs purport to represent a class, their alleged damages provide an appropriate basis on which to calculate the damages of a typical class member."); *In re Blackbaud, Inc*., 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (ruling similarly).

*McKinnon Motors*, 329 F.3d 805, 808, n.4 (11th Cir. 2003) (courts may also factor in possible attorneys' fee awards, where permitted by statute, when determining the amount in controversy for removal purposes); *Sheffield Woods at Wellington Condo. Ass'n, Inc. v. Scottsdale Ins. Co.*, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (finding amount in controversy met, in part based upon plaintiff's claim for fees pursuant to Florida statute). Thus, all three of the CAFA removal requirements are met in this case and, as such, removal to this Court is proper.

## CONCLUSION

16. Defendant, having satisfied all requirements for removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, respectfully submits this Notice of Removal, requests that the State Court Action be removed to this Court, and requests that the Court assume full jurisdiction over the case herein as provided by law.

WHEREFORE, Defendant hereby respectfully removes this civil action to this Court.

Dated: February 11, 2022           Respectfully Submitted,

                                      **MARK MIGDAL & HAYDEN**
                                      80 S.W. 8th Street, Suite 1999
                                      Miami, Florida 33130
                                      Telephone: (305) 374-0440

By: _s/ Yaniv Adar_
  Josh A. Migdal, Esq.
  Florida Bar No. 19136
  josh@markmigdal.com
  Yaniv Adar, Esq.
  Florida Bar No. 63804
  yaniv@markmigdal.com
  eservice@markmigdal.com

*Attorneys for Defendant Sticker Mule, LLC*

## **CERTIFICIATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on February 11, 2022, which served same electronically upon all counsel of record.

/s/     Yaniv Adar
Yaniv Adar